

DA 08-0624

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 184

IN RE THE MARRIAGE OF

WILLIAM A. D'ALTON,

        Petitioner and Appellant,

   and

MOIRA MURPHY D'ALTON,

        Respondent and Appellee.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DR 01-1265
Honorable Gregory R. Todd, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

          William A. D'Alton (self-represented), Billings, Montana

       For Appellee:

          Kevin T. Sweeney, Attorney at Law, Billings, Montana

Submitted on Briefs:  May 6, 2009

Decided:  May 27, 2009

Filed:

_____
                 Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 William A. D'Alton (Bill) appeals from orders of the Thirteenth Judicial District Court, Yellowstone County, dismissing his motion to modify the parenting plan regarding his two children with ex-wife Moira Murphy D'Alton (Moira), awarding attorney fees to Moira, and rejecting Bill's argument that he has satisfied a home-equity loan obligation. We affirm.

¶2 Bill presents the following issues for review:

¶3 Whether the District Court erred by dismissing Bill's motion to amend the parenting plan.

¶4 Whether the District Court erred by granting Moira attorney fees.

¶5 Whether the District Court erred by "rejecting" Bill's position on the issue of the home-equity payment.

## BACKGROUND

¶6 Bill and Moira married on April 20, 1995. Bill filed for dissolution of marriage on November 6, 2001. Bill and Moira have two minor children. On April 17, 2002, the District Court issued its findings of fact and conclusions of law, dissolving the marriage and ordering a parenting plan that granted custody of the children principally with Moira for ten days every two weeks, and with Bill for the remaining four days of every two weeks. On May 16, 2008, Bill filed a motion to amend the parenting plan to allow a week-to-week custody arrangement. On July 15, 2008, the District Court denied Bill's motion to amend the parenting plan. Finally, on November 10, 2008, the District Court

2

awarded Moira attorney fees as the successful party in parenting modification litigation and resolved a dispute regarding a loan obligation allocated in the dissolution order. Bill appeals from both District Court orders.

**STANDARD OF REVIEW**

¶7 When considering parenting plan modifications, we review the findings of fact underlying a district court's decision to modify a parenting plan for whether they are clearly erroneous. *In re Marriage of Oehlke*, 2002 MT 79, ¶ 9, 309 Mont. 254, 46 P.3d 49. If these underlying findings are not clearly erroneous, then we will overturn the district court only if there is a clear abuse of discretion. *Marriage of Oehlke*, ¶ 9. We review a district court's grant or denial of attorney fees for abuse of discretion. *In re Marriage of Gorton & Robbins*, 2008 MT 123, ¶ 45, 342 Mont. 537, 182 P.3d 746. We review a district court's determination of whether a property settlement agreement is unconscionable for abuse of discretion. *Marriage of Gorton & Robbins*, ¶ 20.

**DISCUSSION**

¶8 *Whether the District Court erred by dismissing Bill's motion to amend the parenting plan.*

¶9 Pursuant to § 40-4-219(1), MCA, parenting plan modifications require a change in the child's circumstances and must be necessary to serve the best interest of the child:

> The court may in its discretion amend a prior parenting plan if it finds, upon the basis of facts that have arisen since the prior plan or that were unknown to the court at the time of entry of the prior plan, that a change has occurred in the circumstances of the child and that the amendment is necessary to serve the best interest of the child.

The party seeking to amend a parenting plan must file a motion and supporting affidavit

3

showing cause for modification. Section 40-4-220(1), MCA. "The court shall deny the motion unless it finds that adequate cause for hearing the motion is established by the affidavits, based on the best interests of the child . . . ." Section 40-4-220(1), MCA. *See Marriage of Oehlke*, ¶ 12.

¶10 Bill argues that the children's changed circumstances are that six years later both children are now in school and the children's nanny was terminated so that she is no longer "a stabilizing force in the children's relationship." Bill further alleges that Moira has willfully and consistently attempted to frustrate his contact with the children, contrary to the children's best interest under § 40-4-219(1)(d), MCA. Specifically, Bill claims that Moira called the sheriff to retrieve a cell phone that the children had left at his house and called an ambulance when their daughter reported having a stomach ache.

¶11 We agree with the District Court's conclusions that these changed circumstances "do not satisfy the initial threshold criteria for this Court to order a show cause hearing to amend the parenting plan." The District Court noted that "[i]f the passage of six (6) years and the children both being in school is sufficient to warrant an amendment, then the courts would be flooded with motions to amend parenting plans in most if not all cases." Indeed, the mere aging of children so that they are now in school could hardly be considered "unknown to the court at the time of entry of the prior plan" as required by § 40-4-219(1), MCA. Similarly, termination of the nanny is not a changed circumstance requiring modification of the parenting plan to serve the best interests of the children. The District Court's inquiry was appropriately focused on the best interests of the children, not Bill or Moira. Bill did not convince the District Court, nor this Court, that

4

any modification to the existing parenting plan is required to serve the children's best interest. "[A] party seeking to modify a parenting plan pursuant to § 40-4-219, MCA, carries a heavy burden of proof." *Marriage of Oehlke*, ¶ 17. Bill has not met his burden of showing that the District Court's findings were clearly erroneous, nor has he supplied any indication that the District Court abused its discretion.

¶12 *Whether the District Court erred by granting Moira attorney fees.*

¶13 Bill's sole justification for reversing the District Court's award of attorney fees and costs of mediation is that the court erred in denying his motion to amend the parenting plan. Since we upheld the District Court's denial of Bill's motion to amend the parenting plan, we further conclude that the District Court did not abuse its discretion in awarding attorney fees to Moira, the prevailing party, in accordance with the provisions of the parenting plan.

¶14 *Whether the District Court erred by "rejecting" Bill's position on the issue of the home-equity payment.*

¶15 Bill argues that the following finding from the decree of dissolution of marriage, drafted by Moira, is ambiguous, and should be construed against her:

> The parties have a home equity loan with US Bank. The loan was originally obtained to pay taxes on an inheritance that Bill received. The home equity loan has also been increased to pay joint consumer debt. Both parties have used the money, but to attempt to bring the allocation of assets and debts towards equity, Bill will be responsible for 25% of said debt or $11,859.00 and Moira responsible for the remaining 75% or $35,578.00. The monthly payment on the loan is $596.00 per month on a principal amount of $47,437.00. Bill should pay to Moira $149.00 by the first of each month beginning May 1, 2002, for his share of the loan. *If Moira sells the home or otherwise pays off the loan, Bill should pay to Moira, one-fourth of the pay off. Bill should pay the amount to Moira in full or*

*continue to pay Moira $149.00 per month until his share is paid in full. If Moira pays off the loan, the remaining amount Bill owes to Moira will accrue interest at the same rate of the former loan.* [Emphasis added.]

Bill further argues that this provision is unconscionable for charging interest on a loan that no longer exists and faults the District Court for a lack of analysis.

¶16 Moira paid off the loan in full about one year after the dissolution decree, but Bill did not join in paying one-fourth of the pay off. Instead Bill continued to pay Moira $149 monthly until his payments totaled $11,859. The plain language of the decree states that "[i]f Moira pays off the loan, the remaining amount Bill owes to Moira will accrue interest at the same rate of the former loan." Bill made his arguments to the District Court at a hearing on October 28, 2008, and the court applied the plain language of its findings. We find nothing unconscionable in enforcing provisions that charge Bill interest on money owed to Moira. We conclude that the District Court did not abuse its discretion in rejecting Bill's position on the issue of the home-equity payment.

¶17 Affirmed.

/S/ MIKE McGRATH

We concur:

/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER
/S/ BRIAN MORRIS

6