DA 23-0108

FILED

12/05/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0108

# IN THE SUPREME COURT OF THE STATE OF MONTANA

2023 MT 235

IN RE THE PARENTING OF L.R.,

ANTHONY REED,

>Petitioner and Appellant,

v.

CATHERINE MARTIN,

>Respondent and Appellee.

APPEAL FROM:  District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DR-16-552
Honorable James B. Wheelis, Presiding Judge

COUNSEL OF RECORD:

>For Appellant:

>Clifford B. Irwin, Irwin Law Office, P.C., Missoula, Montana

>For Appellee:

>Brandi R. Ries, Emily A. Lucas, Ries Law Group, P.C., Missoula, Montana

Submitted on Briefs:  October 4, 2023

Decided:  December 5, 2023

Filed:

_____
Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Anthony Reed (Anthony) appeals from the January 10, 2023, Order on Motion to Amend Parenting Plan issued by the Fourth Judicial District, Missoula County, denying his motion to modify the parenting plan. We reverse and remand for action consistent with this Opinion.

¶2 We restate the issues on appeal as follows:

*1. Whether the District Court abused its discretion in denying Anthony's motion to amend parenting plan without holding a hearing?*

*2. Whether the District Court erred in declining to order a parenting evaluation and/or appoint a Guardian Ad Litem?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 This is the second appeal relating to the District Court's establishment of a parenting plan and the continuation of that plan over the last nearly 8 years. To provide some context we restate the factual background of the first appeal:

Anthony and Catherine had a tumultuous relationship. As a result of their relationship, they have one child, L.R., born in 2013. After the parties separated in December 2015, L.R. resided on a primary basis with Catherine and Anthony initially parented a few hours on Tuesdays, Thursdays, and then Sundays. In March 2016, Anthony's parenting time expanded to Tuesday and Thursday overnights and weekends. In June 2016, Anthony advised Catherine since the parties were parenting L.R. on an equal basis, he would not pay her child support. He further advised he was willing to take L.R. more to help her out. Thereafter, the parties' relationship became more contentious. Anthony filed a Petition for Establishment of Permanent Parenting Plan on July 22, 2016, and the parties maintained the parenting arrangement with Anthony parenting Tuesday and Thursday overnights and weekends until November 4, 2016. Following hearing on November 1, 2016, the District Court issued its Order Adopting Respondent's Proposed Parenting Plan as Interim Parenting Plan on November 4, 2016. Following

2

the court's denial of Anthony's motions for Appointment of a Guardian Ad Litem, for Court-Ordered Parenting Evaluation, for Joint Evaluation of Parents, and to Disqualify Presiding Judge, the District Court held trial on November 27, 2017. The parties each testified in support of their respective positions, presenting wildly divergent perceptions of their relationship and parenting abilities. Post-trial, the District Court issued its Findings of Fact, Conclusions of Law, and Decree Establishing Permanent Parenting Plan which adopted Catherine's proposed parenting plan—previously adopted by the court as the interim parenting plan—as the Final Parenting Plan.

*In re the Parenting of L.R.*, 2018 MT 294N, ¶ 3. At the time of the first appeal, Anthony sought a parenting evaluation and/or appointment of a Guardian Ad Litem. We observed that, "While a guardian ad litem or parenting evaluation may assist the court, both are discretionary[]" and affirmed the parenting plan issued by the District Court which limited Anthony to supervised visitation with L.R. Despite affirming the parenting plan, we recognized that the parenting plan failed to provide Anthony a means to progress beyond supervised visitation and failed to address L.R.'s needs over time:

> Although we conclude the District Court did not abuse its discretion in establishing the Final Parenting Plan, we recognize there will likely be a future request to amend the parenting plan as the current plan provides no viable means to progress beyond supervised visitation and does not address L.R.'s needs as he matures and grows. Upon initiation of a modification action, it would be prudent for the court to order a qualified individual, such as a clinical psychologist with experience in child development, parenting assessment, and domestic violence to conduct a parenting evaluation and make recommendations regarding amendment of the parenting plan to progress beyond supervised contact between Anthony and L.R. and provide for L.R.'s needs as he matures and grows. It may also be advisable to appoint a guardian ad litem to represent L.R.'s best interest.

¶4      Anthony filed a Motion to Amend the Parenting Plan on August 9, 2019, asserting a change in L.R.'s circumstances such that amendment of the parenting plan was necessary

3

to serve his best interests. At that time, although the District Court acknowledged it should appoint a Guardian Ad Litem, it did not do so and instead indicated it intended "to wait at least two more years" to consider amending the plan. The District Court determined Anthony failed to meet the requirements of § 40-4-219(1), MCA (which requires a showing of changed circumstances) and denied Anthony's motion without holding an evidentiary hearing. Anthony did not appeal the denial of his motion.

¶5     Given the District Court's prior guidance that it would not consider issues related to amending the parenting plan for two years, Anthony, out of an abundance of caution, waited three years to again seek amendment of the parenting plan. On November 16, 2022, Anthony filed a Motion to Amend Parenting Plan, Authorize a Parenting Evaluation, and Appoint a Guardian Ad Litem. Citing *In re S.W.B.S.*, 2019 MT 1, 394 Mont. 52, 432 P.3d 709, he asserted that as the District Court in its October 27, 2019, order set review of the parenting plan upon the expiration of two years, he did not need to establish a change in circumstances. He also asserted though that since the District Court's last evidentiary consideration leading to issuance of the original Final Parenting Plan, there had been a change in L.R.'s circumstances and that amendment of the parenting plan was necessary to serve L.R.'s best interests. Anthony asserted that since issuance of the Final Parenting Plan a number of changes had occurred affecting L.R. in addition to the significant amount of time which had passed since then—6 years. Anthony asserted his overall situation had improved such that he was now in a position to be a stabilizing influence on L.R. as he matures and grows. L.R. was 3 years old when the court ordered contact between Anthony

4

and L.R. to be supervised. L.R. was 4 ½ years old when the current Final Parenting Plan was issued. Since adoption of the Final Parenting Plan, Anthony applied for, was accepted into, and graduated from law school; he passed the bar exam; and he was accepted into the legal bar. He practiced law for a year at a Missoula law firm and then took a position as an attorney with the public defender's office in Missoula where he continues to work. He has entered into a committed and loving relationship with Liz, an archaeologist who works for the Bureau of Land Management. Given the constraints of his supervised contact with L.R., L.R. has been precluded from enjoying a relationship with Liz, who, like L.R. is one of the most important people in Anthony's life. L.R. has also been precluded from enjoying a relationship with his paternal grandparents. Anthony asserted it to be in L.R.'s best interests to engage in and develop a relationship with his paternal grandparents and with Liz. Throughout the last 6 years, L.R. has grown from a preschooler to an elementary student. By virtue of his age, he is no longer completely dependent and his activities have significantly expanded. L.R. is now independently engaging in school, sports, and other extra-curricular activities. Anthony believes it is in L.R.'s best interests for Anthony to be able to participate with L.R. in school, sports, and extra-curricular activities. Anthony asserts research has shown interaction with an engaged father benefits young boys as they mature and grow and he asserts it is in L.R.'s best interests for Anthony to be more engaged than merely having supervised contact with L.R. Both Anthony and L.R. have each been engaging in independent therapy. As a result of his participation in therapy, Anthony asserts he has a better understanding of himself and his interactions which he believes, in

5

turn, is a benefit to L.R. and thus affects his best interests. He also believes it would be in L.R.'s best interests for Anthony to be able to engage with L.R.'s therapist to provide the therapist with a fuller understanding of the history and relationship of the parties to better assist the therapist in working with L.R. Anthony asserts L.R. has expressed desire to interact with Anthony at his home and in the community—doing activities such as camping, hiking, biking, and skiing—such that now he believes supervised contact is unhealthy for L.R. as it reinforces the unwarranted impression that Anthony is a "second-class parent" and deprives L.R. of experiencing the fullness of a kind, loving, and safe relationship with his father. Finally, Anthony also asserts Appellee, Catherine Martin (Martin), over the years since adoption of the Final Parenting Plan, has engaged in parent alienation continually undermining Anthony's relationship with L.R. which is not in L.R.'s best interest.

¶6 Martin objected to amendment of the parenting plan, asserting Anthony did not establish a change in circumstances as required by § 40-4-219, MCA. Although she did not contradict the changes asserted by Anthony, she characterizes them as changes in Anthony's circumstances and not changes in L.R.'s circumstances. The District Court agreed with Martin and on January 10, 2023, again denied Anthony's motion to amend the parenting plan without holding a hearing. Anthony appeals.

**STANDARD OF REVIEW**

¶7 We review a district court's denial of an evidentiary hearing for a clear abuse of discretion. *State v. Terronez*, 2017 MT 296, ¶ 19, 389 Mont. 421, 406 P.3d 947 (citing

6

*State v. Schulke*, 2005 MT 77, ¶ 10, 326 Mont. 390, 109 P.3d 744). We review the underlying findings in support of a district court's decision to modify a parenting plan under the clearly erroneous standard. *Guffin v. Plaisted-Harman*, 2010 MT 100, ¶ 20, 356 Mont. 218, 232 P.3d 888. We review a district court's conclusions of law to determine if they are correct. *In re the Parenting of C.J.*, 2016 MT 93, ¶ 12, 383 Mont. 197, 369 P.3d 1028. A district court has broad discretion when considering the parenting of a child, and we must presume that the court carefully considered the evidence and made the correct decision. *C.J.*, ¶ 13 (citation omitted). Accordingly, absent clearly erroneous findings, we will not disturb a district court's decision regarding parenting plans unless there is a clear abuse of discretion. *C.J.*, ¶ 13.

**DISCUSSION**

¶8    *1. Whether the District Court abused its discretion in denying Anthony's motion to amend parenting plan without holding a hearing?*

¶9    A district court may, in its discretion, "amend a prior parenting plan if it finds, upon the basis of facts that have arisen since the prior plan or that were unknown to the court at the time of entry of the prior plan, that a change has occurred in the circumstances of the child and that the amendment is necessary to serve the best interest of the child." Section 40-4-219, MCA. Upon a parent filing an affidavit in support of a requested amendment and receiving an opposing affidavit, if any, the court shall set a hearing on the request for amendment if the court finds that adequate cause is established by the affidavits based on the best interests of the children. Section 40-4-220, MCA.

7

¶10    Martin asserts the only change in L.R.'s circumstances is mere aging and, citing *In re D'Alton*, 2009 MT 184, ¶ 11, 351 Mont. 51, 209 P.3d 251, that this Court has determined that the mere aging of a child is not a basis for modification of a parenting plan. She further asserts the changed circumstances detailed by Anthony are changes in his circumstances, not those of L.R.

¶11    Martin mischaracterizes our holding in *D'Alton*. In *D'Alton*, the district court issued a dissolution decree and a parenting plan in which the parties shared parenting of their children on a 70/30 basis. Father sought modification seeking a 50/50 parenting arrangement, asserting the children's changed circumstances were that both children were now in school and the children's nanny was terminated. We affirmed the district court's conclusion that father had not established the initial threshold criteria required by § 40-4-219, MCA, as "the mere aging of children so that they are now in school could hardly be considered 'unknown to the court at the time of entry of the prior plan' as required by § 40-4-219(1), MCA." *D'Alton*, ¶ 11. We affirmed the district court's finding father did not establish that modification was required to serve the children's best interests. We did not blanketly hold that aging of a child can never be considered in determining whether there have been changes in the circumstances of the child and that amendment is necessary to serve the best interests of the child. In fact, we have previously recognized that "a child may undergo significant developmental changes as he grows and matures, and those developmental changes may result in a substantial change in the child's circumstances. "When parents have not previously decided that periodic review is in their child's best

interest, a court must consider whether those developmental changes resulted in a change in the child's circumstances under § 40-4-219(1), MCA." *In re S.W.B.S.*, ¶ 15. *D'Alton* is significantly different than the case at hand. In *D'Alton*, under the existing parenting plan, both parents enjoyed unsupervised parenting time with their children in their own homes. There was no assertion that father had improved his/her employment or stability in the community which would have any impact on the children. There was no assertion that the children's relationships with father were being compromised to their detriment by the existing parenting plan. There was no assertion the children were being denied relationships to their detriment with their extended family or individuals of significance to father. There were no allegations that father was precluded by the current parenting plan from engaging in school, sport, or extra-curricular activities with the children to their detriment or that the children desired the requested amendment. Whether a parent is able to establish the initial threshold criteria for the court to order a show cause hearing pursuant to § 40-4-220, MCA, depends on the facts and circumstances alleged and how they are purported to affect a child's best interests.

¶12 Here, although there is not an evidentiary record, the vast majority of the changes asserted by Anthony are not contested. Martin ignores the significant developmental changes L.R. has experienced in growing from a toddler to a 10-year-old and the way in which those developmental changes have resulted in a substantial change in his circumstances. Further, we have recognized that changes in a parent's circumstances may constitute a change in the circumstances of the child *See*, *Sian v. Kooyer*, 2010 MT 178,

9

357 MT 215, 239 P.3d 121 (a change of circumstances was found when father became disabled, moved out of state, and lost his employment); *In re Marriage of Clay*, 2007 MT 228, 339 Mont. 147, 168 P.3d 665 (changes in circumstance established by mother moving and having to drive 90 miles each way to deliver the children to and from school and households and father intending to move in with his significant other); *In re Marriage of Carter*, 2003 MT 19, 314 Mont. 84, 63 P.3d 1124 (mother moved out of state). From the allegations asserted by Anthony and not contested by Martin, together with the District Court and this Court's prior recognitions that the parenting plan provided no means to progress beyond supervised visitation and did not provide for L.R.'s needs as he matures and grows, it is apparent Anthony met his burden under § 40-4-219(1), MCA, that a change of circumstances of the child has occurred and the District Court's failure to hold a hearing and finding otherwise was clearly erroneous.

¶13 The remote discord experienced between the parties does not support that L.R. should forever be deprived of an unsupervised relationship between himself and his father. Nor does it warrant denying L.R. a relationship with his paternal grandparents and other relatives and significant individuals in Anthony's life. Anthony has consistently exercised the minimal parenting he has been allowed and has continually sought to take on more parenting responsibilities. There is no history whatsoever of Anthony physically harming L.R., yet L.R. has been deprived the opportunity to engage in activities and experience the world on a day-to-day basis with his father. As we noted in *In re L.R. I*, the current parenting plan "provides no viable means to progress beyond supervised visitation and

does not address L.R.'s needs as he matures and grows." Having established a change in L.R.'s circumstances, it is imperative the District Court hold a hearing to consider amendment of the parenting plan in L.R.'s best interests which provides for—through periodic review or otherwise—his needs as he matures and grows.

¶14 *2. Whether the District Court erred in declining to order a parenting evaluation or appoint a Guardian Ad Litem?*

¶15 In the alternative to his Motion to Amend Parenting Plan, Anthony brought a motion to authorize a parenting evaluation by a licensed clinical psychologist and/or appoint a Guardian Ad Litem at Anthony's expense. As we have concluded the District Court must hold a hearing to consider amendment of the parenting plan in L.R.'s best interests, it is not necessary for us to determine whether the District Court erred in not ordering a parenting evaluation and/or appointing a Guardian Ad Litem. We do, however, recognize that we are remanding to the District Court to hold a hearing to consider amendment of the parenting plan in L.R.'s best interests. As such, and in light of the unusually contentious history between the parties and the length of time L.R. and Anthony have endured supervised contact, it does appear appropriate for the District Court to, at a minimum, order a parenting evaluation to assist the court in determining L.R.'s best interests and, if the District Court finds it appropriate, appoint a Guardian Ad Litem.

## CONCLUSION

¶16 Anthony met his burden under § 40-4-219(1), MCA, that a change of circumstances of the child has occurred and the District Court's failure to hold a hearing and finding

11

otherwise was clearly erroneous.  The motion, when considered in light of the supporting affidavit and Martin's response thereto, established a change in L.R.'s circumstances such that it is imperative the District Court hold a hearing to consider amendment to the parenting plan in L.R.'s best interests, which provides for—through periodic review or otherwise—his needs as he matures and grows.  At a minimum, to assist in this, the District Court should order a parenting evaluation and, if the District Court deems necessary, appoint a Guardian Ad Litem as well.

¶17    Reversed and remanded for action consistent with this Opinion.[1]

/S/ INGRID GUSTAFSON

We concur:

/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR

---

[1] Anthony's Opening Brief contains a subheading entitled "Motion for Substitution of District Court Judge" where he asserts the District Court judge is biased and prejudiced against him and he seeks to substitute the judge who has presided over this matter.  We note that the district court judge who has presided over this cause has retired and will not continue as the presiding judge. As such, we need not address this issue further.